UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-60963-Cv-UNGARO
MAGISTRATE P. A. WHITE

BOBBY LEE BOLT,                    :

        Plaintiff,          :

v.                                :          REPORT OF
                                             MAGISTRATE JUDGE

OFFICER LOSA, et al.              :

        Defendants.         :

_____

## I. Introduction

The plaintiff, Bobby Bolt, is presently incarcerated at the Gainesville Correctional Institution in Gainesville, Florida. Bolt filed a pro se civil rights complaint (DE#1), pursuant to 42 U.S.C. §1983 on June 24, 2009 (DE#1) against the City of Fort Lauderdale Police Department and three of its officers for their alleged use of excessive force, failure to intervene and warrantless search and seizure of his vehicle without consent or probable cause when he was arrested on or about June 25, 2007.

As defendants, Bolt named the City of Fort Lauderdale Police Department, Officer Jameson Jones, Officer Anthony Agular and Sergeant John Lefferts in their official capacities. (DE#1). However, on August 24, 2009, the undersigned issued a Preliminary Report pursuant to 28 U.S.C. §1915, which asserted that Bolt's complaint stated a cause of action against Officers Jones for an unconstitutional seizure, against Officers Jones and Agular for use of excessive force and against Sergeant Lefferts for failing to intervene during Bolt's arrest, all under the Fourth Amendment in their individual capacities. (DE#6). The Honorable Ursula Ungaro, United States District Judge, affirmed the report on September 30, 2009. (DE#17).

The Defendants moved for Partial Summary Judgment on May 27, 2010. (DE#58). The Defendants argue that partial summary judgment should be granted because the evidence shows that they did not unconstitutionally use excessive force or failed to intervene against Bolt post-arrest and post-apprehension, that probable cause existed for Bolt's seizure and arrest and they are entitled to qualified immunity.[1] (Id.). An Order of Instruction informing Bolt of his right to respond to the summary judgment motion was issued on June 4, 2010. (DE#61). Then, on June 9, 2010, Bolt filed an unsworn Motion for Summary Judgment alleging that he never consented to a search of his vehicle and he suffered cruel and unusual punishment after being beaten in the face and taunted by the officers. (Id.). Thereto, Bolt attached a summary of facts previously included in his complaint, along with the some of the exhibits already provided by the Defendants in their motion for partial summary judgment (Id.). A reply thereto was filed by the Defendants on July 5, 2010. (DE#72). Finally, on July 13, 2010, Bolt filed an unsworn Response without any exhibits in support thereof. (DE#74).

<u>Factual Background</u>

The sequence of events described briefly in Bolt's §1983 complaint is essentially the same as that which is described in evidentiary documents of record, attached to the Defendants' motion for partial summary judgment and Bolt's response. The statement of facts in Bolt's complaint, however, is highly abbreviated, and omits many pertinent details (established by the Defendants' exhibits), which are consistent with the sequence of events set out by Bolt, but at the same time shed additional light upon the events which occurred and shed light upon the bases for the Defendants' actions about which Bolt now complains.

---

[1]The Defendants argue that for purposes of summary judgment and based upon Bolt's admission to his pre-arrest physical resistence and evasion and based upon Bolt's *nolo contendere* plea to the charge of resisting arrest with violence, and his subsequent conviction, Bolt's Fourth Amendment excessive force claims are necessarily limited to any alleged post-arrest and post-apprehension use of force.

As noted _supra_, the body of Bolt's Response, along with his
Motion for Summary Judgment, are themselves unsworn documents. As
such, said documents therefore do not themselves suffice as
competent evidence of the type contemplated by Fed.R.Civ.P. 56,
needed to rebut evidentiary showings by the defendants/movants, so
as to create genuine issues of material fact.[2] The only documents

---

[2]Rule 56(c) of the Federal Rules of Civil Procedure provides that
summary judgment is proper

> [i]f the pleadings, depositions, answers to
> interrogatories, and admissions on file, together with
> the affidavits, if any, show that there is no genuine
> issue as to any material fact, and that the moving
> party is entitled to judgment as a matter of law.

In _Celotex Corp. v. Catrett_, 477 U.S. 317 (1986), the Court held that
summary judgment should be entered only against

> a party who fails to make a showing sufficient to
> establish the existence of an element essential to
> that party's case, and on which that party will bear
> the burden of proof at trial.  In such a situation,
> there can be 'no genuine issue as to any material
> fact, 'since a complete failure of proof concerning an
> essential element of the non-moving party's case
> necessarily renders all other facts immaterial. The
> moving party is 'entitled to judgment as a matter of
> law' because the non-moving party has failed to make a
> sufficient showing on an essential element of her case
> with respect to which she has the burden of proof.
> (citations omitted)

Thus, in _Celotex Corp. v. Catrett_, 477 U.S. 317 (1986), the Court held
that summary judgment should be entered only against a party who fails to make
a showing sufficient to establish the existence of an element essential to
that party's case, and on which that party will bear the burden of proof at
trial.  In such a situation, there can be 'no genuine issue as to any material
fact,' since a complete failure of proof concerning an essential element of
the non-moving party's case necessarily renders all other facts immaterial.
The moving party is 'entitled to judgment as a matter of law' because the non-
moving party has failed to make a sufficient showing on an essential element
of her case with respect to which she has the burden of proof. (citations
omitted). Thus, pursuant to _Celotex_ and its progeny, a movant for summary
judgment bears the initial responsibility of informing the court of the basis
for his motion by identifying those parts of the record that demonstrate the
nonexistence of a genuine issue of material fact. This demonstration need not
be accompanied by affidavits. _Hoffman v. Allied Corp._, 912 F.2d 1379, 1382
(11th Cir. 1990). If the party seeking summary judgment meets the initial
burden of demonstrating the absence of a genuine issue of material fact, the
burden then shifts to the nonmoving party, to come forward with sufficient
evidence to rebut this showing with affidavits or other relevant and

submitted by Bolt which could serve for that purpose is his complaint, which was filed under penalty of perjury (DE#1),[3] and Bolt's exhibits limited to the Supplemental Reports, along with the Complaint and Probable Cause affidavit, all authored by Officers Agular and Jones. (DE#64).

Bolt's factual allegations concerning his June 25, 2007 arrest, as set forth in his complaint (DE#1), are as follow. After initiating a traffic stop for purportedly driving without headlights, Officer Jones requested Bolt's driver's license, registration and insurance. Bolt provided the officer with the requested documents and following their review, Officer Jones directed Bolt to exit his vehicle, conducted a pat down and upon conclusion thereof, requested Bolt to sit on the curb. Bolt asserts

---

admissible evidence. Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir.), cert. denied, 112 S.Ct. 913 (1992). It is the nonmoving party's burden to come forward with evidence on each essential element of his claim sufficient to sustain a jury verdict. Earley v. Champion International Corp., 907 F.2d 1077, 1080 (11th Cir.1990). The non-moving party cannot rely solely on his complaint and other initial pleadings to contest a motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise to show that there are material issues of fact which require a trial Fed.R.Civ.P. 56(e); Coleman v. Smith, 828 F.2d 714, 717 (11th Cir. 1987). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Baldwin County, Alabama v. Purcell Corp., 971 F.2d 1558 (11th Cir. 1992). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing Anderson v. Liberty Lobby, Inc., supra).

Pursuant to Brown v. Shinbaum, 828 F.2d 707 (11th Cir. 1987), the Order of Instructions (DE#61) was entered, informing the pro se plaintiff Bolt of his right to oppose the defendants' joint motion for partial summary judgment (DE#58), and instructing him regarding requirements under Fed.R.Civ.P. 56 for a proper response to such a motion.

[3]    See Perry v. Thompson, 786 F.2d 1093, 1095 (11th Cir. 1986) (holding that facts alleged by the plaintiff in a sworn pleading are sufficient to defeat a motion for summary judgment, and it is improper to grant summary judgment on the basis of credibility choices); Sammons v. Taylor, 967 F.2d 1533, 1544-45 & n.5 (11th Cir.1992) (holding that the "facts alleged in an inmate's sworn pleading are sufficient" to defeat as motion for summary judgment and "a separate affidavit is not necessary," so long as the allegations are not conclusory in nature). Cf. 28 U.S.C. §1746, which provides an alternative to making a sworn statement, by allowing the individual to say that his/her statement is true under penalty of perjury.

4

a "field card" test was conducted once Officer Jones determined Bolt had been driving through a known drug area. During this entire process, Sergeant Lefferts was present and he was the one who engaged Bolt in conversation, specifically asking Bolt why he had not previously disclosed his probation status, after hearing through the police radio that Bolt was on probation.

According to the factual proffer Bolt provides in his complaint, when Officer Agular arrived, he, along with Officer Jones and Sergeant Lefferts informed Bolt he was under arrest for cocaine possession, to which Bolt responded "Man you tripping!" In an attempt to apprehend Bolt, the officers and Bolt ensued in a struggle. Bolt asserts, Sergeant Lefferts then directed Officer Agular to hit Bolt, at which time Bolt saw Officer Agular had a gun. Because Bolt was yelled warnings that he should get down or he would be shot, he attempted to comply but was shot by Officer Agular in the right shoulder before being able to do so. Bolt then fled, causing the officers to chase after him. Eventually, Officer Jones apprehended Bolt by his shirt, submitted him to the ground and handcuffed him. Due to the physical restraints the officers had on Bolt, he alleges to have had difficulty breathing.

Thereafter, Bolt was transported to a hospital where he was diagnosed with a concussion and wounds that required sutures. Thereat, Bolt overheard Officers Jones and Agular conspire to falsify the arrest report to make it appear that Bolt was encountered on a different street presumably in a "known drug area."

The officers' account of the situation is as follows. On or about June 25, 2007, Officer Jones conducted a traffic stop on West Broward Boulevard in the City of Fort Lauderdale, using his lights and siren when he noticed a vehicle driving without any headlights on. (DE#59; see also DE#59,Ex.1). Notwithstanding, the vehicle continued driving; however, upon final rest thereof, the driver appeared to be looking for something in the center console area of the vehicle, a lot of movement was seen by the driver in the center

area of the vehicle. (Id.). Upon Officer Jones's approach to the passenger side of the vehicle, he saw the driver, Bolt, dropping a small white plastic looking vial onto the floor area of the vehicle as he looked towards the driver side window. (Id.). Bolt was then asked for his license, registration, proof of insurance and consent to search his vehicle, all which he provided. (Id.).

Bolt and his passenger, were then removed from the vehicle, a pat down for weapons was conducted, and they were then instructed to sit on the curb. (DE#50; see also DE#59,Ex.1). Officer Agular conducted a search of the vehicle which led to the discovery of an open white plastic vial just underneath the driver's seat containing what appeared to be several crack cocaine rocks, which subsequently field tested positive for cocaine. (Id.). Officers Jones and Agular then attempted to place Bolt in custody. (Id.). Bolt was told he was under arrest and to place his hands behind his back. (Id.). According to the officers, no force of any type was used on Bolt prior to Bolt resisting Officers Jones and Lefferts's efforts to handcuff him. (Id.). However, when the officers attempted to grab Bolt to arrest him, Bolt resisted and they engaged in a struggle. (Id.). Bolt stood up and pushed Officer Jones with open hands across the officer's chest area, throwing Jones back and off-balance. (Id.). Officer Agular then grabbed Bolt by his left arm while Officers Agular and Jones gave loud verbal commands to stop resisting and informing Bolt that he was under arrest. (Id.). Bolt then tensed and lowered his center of gravity and pulled away from Officer Agular and Bolt then swung his right arm with a closed fist striking Officer Agular in the chest area, forcing Officer Agular to fall backwards onto the ground. (Id.).

Bolt then began to run northbound away from Officers Agular and Jones, at which point Jones was able to grab Bolt's arm and gave him a loud verbal command to stop resisting, and to stop fighting. (DE#59). Bolt then swung back his right elbow striking Officer Jones in the right shoulder and neck area knocking Officer Jones backwards into his own patrol car. (Id.). Officer Jones grabbed Bolt's shirt, but Bolt again swung his left elbow, striking

Officer Jones several times in the chest area and left arm. (<u>Id.</u>). Sergeant Lefferts was able to assist and temporarily held Bolt, at which point Bolt began to violently swing and flail his arms in an attempt to strike the officers. (<u>Id.</u>).

Prior to the use of force in response to Bolt's physical and violent resistence to arrest, specifically the use of a taser device, verbal warnings and instructions were given to Bolt to get down or he would be tased. (DE#59). Officer Agular pulled out his department issued taser and gave Bolt several loud commands warning Bolt to get on the ground or he would be tased. (<u>Id.</u>). Bolt broke away from Jones's grasp on Bolt's left arm and Bolt proceeded to elbow Officer Jones in the face and neck area, pushing Officer Jones back slightly. (<u>Id.</u>). Bolt then lunged at Officer Agular, grabbing the taser and pulled it violently towards himself in an attempt tp disarm the officer. (<u>Id.</u>). Notwithstanding, Officer Agular regained control of the taser and deployed it, striking Bolt in the right shoulder area. (<u>Id.</u>). After Bolt was tased, he asserts that he said "Okay, Okay, Im gonna get down." (<u>Id.</u>). However, despite informing the officers that he would comply and "get down," Bolt admits that he instead jumped up, ran and fled from the officers. (<u>Id.</u>). According to Bolt, when Officer Jones caught up to him, Officer Jones grabbed Bolt's shirt. (<u>Id.</u>).

Officer Jones grabbed Bolt around the waist, whereupon Bolt began violently scratching the officer's upper right and left arms as well as strike the officer in the arms with his fists and attempted to elbow the officer in the face area. (DE#59). Officer Agular attempted to tase Bolt again, but it had no effect on him. (<u>Id.</u>). Loud verbal commands were continuously issued to Bolt to stop resisting, to stop fighting, and to place his hands behind his back. (<u>Id.</u>). Notwithstanding, Bolt failed to comply with the repeated verbal commands and he was then taken to the ground. (<u>Id.</u>). Bolt continued to strike Officer Jones in the chest and arms with closed fists. (<u>Id.</u>). Commands to stop resisting were continuously given, with Bolt failing to comply each time. (<u>Id.</u>). When Officer Agular attempted to use his radio to update their

location, Bolt grabbed the radio ripping it out of the holster and ripping the microphone wires off. (Id.). Bolt then began to try and stand up, cocked his left arm back and swung at Officer Agular's face. (Id.). Having been deprived of his means of communication, and being under violent attack by Bolt, Officer Agular struck Bolt with closed fists in the face area about three times, causing a minor laceration. (Id.). Bolt then turned on his stomach, tucked his arms underneath him, preventing any efforts to handcuff him. (Id.).

Despite Bolt's sworn assertion that while laying in the grass, he was in a submissive position, on his stomach, with his hands behind his back, in Bolt's own words, Officers Jones and Agular "attempted" to handcuff him. (DE#59). Because Bolt refused to lace his hands behind his back, and instead tucked them underneath him, Officer Jones struck Bolt with a closed fist in the rear of his left arm, causing Bolt's arm to be freed and resulted in Officer Jones being able to attach handcuffs to his wrist. (Id.). Bolt nonetheless refused to free his right arm, which was also tucked underneath him, and continued to ignore verbal commands to stop resisting. (Id.). Bolt's right arm was then pried from underneath him and he was subsequently taken into custody. (Id.). EMT responded and transported Bolt and Officer Jones to Broward Medical Center for medical clearance. (Id.). Despite alleging that he was beaten in the face, with alleged severe injuries, Bolt's booking photograph shows no indication of such a beating or injuries. (Id.). On or about September 22, 2008, pursuant to Bolt's plea of *nolo contendre*, a Judgment was entered against him, adjudicating him guilty of resisting arrest with violence, in violation of Florida Statute §843.01. (Id.).

## II.Evidence Submitted

The evidence before this Court on this motion is as follows:

1. A Fort Lauderdale Police Department Offense Incident Report, dated June 25, 2007, authored by Officer Jones, including

Supplemental Reports by Officer Agular and Sergeant Lefferts, Property Report and Vehicle Report relating to Bolt, all which supports the Defendants' version of events. (DE#59,Ex.1,3,4;DE#64).

2.  A Complaint and Probable Cause affidavit, dated June 26, 2007, authored by Officers Agular and Jones, relating to Bolt, which also supports the Defendants' version of events. (DE#59,Ex.2;DE#64).

3.  A photograph which allegedly depicts Bolt at the time of booking. (DE#59,Ex.5).

4.  The recorded Judgment related to a no contest plea by Bolt entered on or about September 22, 2008, case number 07-11656CF10A in the 17th Judicial Circuit in and for Broward County. (DE#59,Ex.6).

5. Seven photographs taken during Bolt's arrest, depicting the state in which Bolt and an unidentified officer were in upon conclusion of the arrest. (DE#67).

All of the above-mentioned evidence was submitted by the Defendants with their partial motion for summary judgment and amply supports their versions of events. In his response to the Defendants' motion for summary judgment, Bolt did not submit any evidence. However, in his motion for summary judgment, Bolt submitted a copy of the facts set forth in his initial complaint, which he titles "Plaintiff Affidavit," although the document is unsworn. (DE#64). He also provides a copy of documents already submitted by the Defendants, namely, the Complaint and Probable Cause Affidavit, along with the Supplemental Reports of Jones, Agular and Lefferts. (Id.).

### III. Legal Standard

a. *Summary Judgment*

Pursuant to Federal Rule of Civil Procedure 56, a party

against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." <u>Fed.R.Civ.P.</u> 56(b). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. <u>Greenberg v. Bell-South Telecomm., Inc.</u>, 498 F.3d 1258, 1263 (11th Cir. 2007)(*per curiam*); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Fed.R.Civ.P.</u> 56(c). Pursuant to <u>Celotex</u> and its progeny, a movant for summary judgment bears the initial responsibility of informing the court of the basis for his motion, and identifying those portions of the record, including pleadings, discovery material, and affidavits, which it believes demonstrate the absence of a genuine issue of material fact. <u>Celotex v. Catrett</u>, 477 U.S. 317, 323 (1986).

The movant may meet this burden by presenting evidence which would be admissible at trial indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some elements of its case on which is bears the ultimate burden of proof. <u>Celotex</u>, 477 U.S. at 322-324. If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party, to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. <u>Avirgan v. Hull</u>, 932 F.2d 1572, 1577 (11th Cir.), <u>cert. denied</u>, 112 S.Ct. 913 (1992).

Here, to survive Defendants' properly supported motion for summary judgment, the plaintiff is required to produce "sufficient [favorable] evidence" establishing proper exhaustion of administrative remedies. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986). Plaintiff, the nonmoving party, bears the burden of coming forward with evidence on each essential element of his claim sufficient to sustain a jury verdict. <u>Earley v. Champion</u>

International Corp., 907 F.2d 1077, 1080 (11th Cir. 1990). The non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," will mandate the entry of summary judgment. Celotex, 477 U.S. at 322-23.

    "Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998). However, "a pro se litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment." Brown v. Crawford, 906 F.2d 667, 670 (11th Cir. 1990). Accordingly, the nonmoving party, even if a pro se prisoner, cannot rely solely on his complaint and other initial pleadings to contest a motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise to show that there are material issues of fact which require a trial Fed.R.Civ.P. 56(e); Coleman v. Smith, 828 F.2d 714, 717 (11th Cir. 1987); Brown v. Shinbaum, 828 F.2d 707 (11th Cir. 1987).

    If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50; Baldwin County, Alabama v. Purcell Corp., 971 F.2d 1558 (11th Cir. 1992). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. at 252).

    Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. Waddell v. Valley Forge Dental Associates, Inc., 276 F.3d

1275, 1279 (11th Cir. 2001); <u>Holifield v. Reno</u>, 115 F.3d 1555, 1564
n.6 (11th Cir. 1997); <u>Harris v. Ostrout</u>, 65 F.3d 912, 916 (11th
Cir. 1995)(grant of summary judgment appropriate where inmate
produces nothing beyond "his own conclusory allegations . . . .
."); <u>Fullman v. Graddick</u>, 739 F.2d 553, 557 (11tj Cir. 1984)("mere
verification of party's own conclusory allegations is not
sufficient to oppose summary judgment . . . ."). Thus, when a
plaintiff fails to set forth specific facts supported by
appropriate evidence sufficient to establish the existence of an
element essential to his case and on which the plaintiff will bear
the burden of proof at trial, summary judgment is due to be granted
in favor of the moving party. <u>Celotex</u>, 477 U.S. at 322; <u>Barnes v.
Southwest Forest Industries, Inc</u>., 814 F.2d 607, 609 (11th Cir.
1987).

    For summary judgment purposes, only disputes involving
material facts are relevant. <u>United States v. One Piece of Real
Property Located at 5800 SW 74th Ave., Miami, FL</u>, 363 F.3d 1099,
1101 (11th Cir. 2004). What is material is determined by the
substantive law applicable to the case. <u>Anderson</u>, 477 U.S. at 248;
<u>Lofton v. Secretary of the Department of Children and Family
Services</u>, 358 F.3d 804, 809 (11th Cir. 2004)("Only factual disputes
that are material under the substantive law governing the case will
preclude entry of summary judgment."). "The mere existence of some
factual dispute will not defeat summary judgment unless that
factual dispute is material to an issue affecting the outcome of
the case." <u>McCormick v. City of Fort Lauderdale</u>, 333 F.3d 1234,
1243 (11th Cir. 2003)(citation omitted). To demonstrate a genuine
issue of material fact, the party opposing summary judgment "must
do more than simply show that there is some metaphysical doubt as
to the material facts . . . . Where the record taken as a whole
could not lead a rational trier of fact to find for the nonmoving
party, there is no 'genuine issue for trial.'" <u>Matsushita Elec.
Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). In
cases where the evidence before the court which is admissible on
its face or which can be reduced to admissible form indicates that
there is no genuine issue of material fact and that the party

moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. <u>Celotex</u>, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact); <u>Waddell</u>, 276 F.3d at 1279 (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and <u>pro se</u> complaints are entitled to liberal interpretation by the courts, a <u>pro se</u> litigant does not escape the burden of establishing by sufficient evidence a genuine issue of material fact. <u>Beard v. Banks</u>, 548 U.S. 521, 525 (2006); <u>Brown v. Crawford</u>, 906 F.2d 667, 670 (11th Cir. 1990). Thus, Plaintiff's <u>pro se</u> status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.

### b. *Qualified Immunity*

The defendants have also argued that they are entitled to qualified immunity on the claims brought against them in their individual capacities and thus summary judgment is appropriate.

Qualified immunity offers complete protection for individual government officials performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982); <u>Priester v. City of Riviera Beach</u>, 208 f.3d 919, 925 (11th Cir. 2000). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." <u>Pearson v. Callahan</u>, 555 U.S. ____, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009).

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Saucier v. Katz, 533 U.S. 194, 200 (2001)(quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). In ruling on qualified immunity, courts engage in a two-step analysis. Saucier v. Katz, 533 U.S. 194, 201 (2001). First, a court must decide whether the evidence, viewed in light most favorable to the party asserting the injury, shows that the official's conduct violated a constitutional right. Id. If the answer is no, defendants are entitled to qualified immunity, and the claims cannot proceed. Id. If, however, a constitutional right may have been violated, the Court must inquire whether the right was clearly established. Id.

The Supreme Court recently held that courts may exercise their discretion in deciding which of the two prongs should be addressed when a defendant raises the qualified immunity defense. Pearson v. Callahan, ___ U.S. ___, 129 S.Ct.808, 172 L.Ed. 2d 565 (2009). In applying Pearson, a Court need not determine whether plaintiff stated a valid claim, but instead it may proceed directly to the second prong and determine whether these defendants are entitled to qualified immunity. Consequently, the Saucier test is no longer mandatory, it is to be used as a guideline when appropriate. See Pearson v. Callahan, 129 S. Ct. at 818. It is "often appropriate," but no longer mandatory, to analyze Saucier's two prongs in the order set forth above. Pearson, 129 S.Ct. at 818. Regardless, review of the record here in the light most favorable to the Plaintiff does not support a finding that the Defendants violated a constitutional right.

As indicated, a cause of action against officials in their individual capacities is available for violations of federal constitutional rights. However, even if this Court were to find that Plaintiff has demonstrated subject matter jurisdiction as to any or all of the Defendants in their individual capacities, an award of summary judgment on behalf of the Defendants is nonetheless appropriate here.

14

c. *Excessive Force/Failure to Intervene*

A claim that a law enforcement officer used excessive force in the course of an arrest, an investigatory stop, or any other seizure of a free citizen is to be analyzed under the Fourth Amendment and its "reasonableness" standard. Graham v. Connor, 490 U.S. 386 (1989); Vinyard v. Wilson, 311 F.3d 1340, 1346-47 (11th Cir. 2002); Lee v. Ferraro, 284 F.3d 1188, 1197 (11th Cir. 2002); Ortega v. Schram, 922 F.2d 684, 694 (11th Cir. 1991).

Such an analysis requires a court to balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the government interest alleged to justify the intrusion." Graham, supra, quoting United States v. Place, 462 U.S. 696 (1983). The factors to consider when balancing an arrestee's constitutional rights and the need for use of force include (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight; Graham, supra, 490 U.S. at 396; Vinyard, supra, 311 F.3d at 1347; Lee, supra, 284 F.3d at 1197; and in determining whether the force applied was "reasonable" under the circumstances, the Court must examine: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; and (3) the extent of the injury inflicted upon the individual to whom the force was applied. Graham, at 396; Vinyard, at 1347; Lee at 1998.[4] In this respect, however, regardless of the severity of the alleged offense, every officer may use some force in carrying out a custodial arrest. See

---

[4] Although the test applied by the Eleventh Circuit previously included a subjective prong, examining whether the force was applied maliciously, see e.g. Leslie v. Ingraham, 786 F.2d 1533, 1536 (11th Cir. 1986), that factor was eliminated from the analysis by Graham and other cases establishing that the excessive force inquiry should be completely objective, thereby excluding consideration of the Officer's intentions. Lee, supra, 284 F.3d at 1198 n.7. Thus, "reasonableness" for purposes of such an analysis is judged according to an objective standard under the totality of the circumstances, without regard to the officers' underlying intent. Graham, supra at 389.

Durruthy v. Pastor, 351 F.3d 1080, 1094 (11th Cir.2003). See Graham v. Connor, 490 U.S. at 396 ("Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it"). Indeed, "the typical arrest involves some force and injury." Rodriguez v. Farrell, 280 F.3d 1341, 1351 (11th Cir.2002) (quoting Graham, supra, 490 U.S. at 396). Therefore, "[i]t is well established in this [the Eleventh] Circuit that where an arrest is supported by probable cause, the application of de minimis force as needed to effect the arrest, without more, will not support a claim for excessive force in violation of the Fourth Amendment." Williams v. Sirmons, No. 08-13218, 2009 WL 80264, at *5-6, 307 Fed.Appx. 354, 360 (11th Cir. 2009)(citing Nolin v. Isbell, 207 F.3d 1253, 1257 (11th Cir.2000)).

Just as a claim of excessive force by an arresting officer is cognizable under 42 U.S.C. §1983, so too is a claim that an officer who himself did not use force, but was present, failed to intervene to prevent unconstitutional force by a fellow officer, if circumstances were such that intervention was possible. See Fundiller v. City of Cooper City, 777 F.2d 1436, 1441-42 (11th Cir. 1985).

It is also a fundamental principle that for §1983 liability to be imposed, the plaintiff must establish proof of an affirmative causal connection between a particular person acting under color of state law and the constitutional deprivation alleged. LaMarca v. Turner, 995 F.2d 1526, 1538 (11th Cir. 1993); Williams v. Bennett, 689 F.2d 1370, (11th Cir. 1982)(citing Monell v. Dept. of Social Servs., 436 U.S. 658, 692 (1978)).

### i. Taser Force

Regarding the use of a taser, the Eleventh Circuit, while noting that "being struck by a taser gun is an unpleasant experience," nonetheless held in Draper v. Reynolds, 369 F.3d 1270, 1278 (11th Cir. 2004) that, based on the facts of that case, "a single use of the taser gun causing a one-time shocking was reasonably propor-

tionate to the need for force and did not inflict any serious in-
jury." The Court in reaching its holding noted that the §1983
plaintiff/arrestee Draper had been encountered during a traffic
stop, had no less than 5 times refused to retrieve documents from
his truck cab, was using profanity, "moved around and paced in agi-
tation," and repeatedly yelled at officer Reynolds before Reynolds
struck him with the taser. The Court noted that "under these cir-
cumstances the single use of the taser gun may well have prevented
a physical struggle and serious harm to either [the arrestee or the
officer]." By contrast, cases have suggested that taser use may,
upon a different set of facts, constitute excessive force.[5]

d. *Search and Seizure*

As stated by the Eleventh Circuit in U.S. v. Alexander, 835
F.2d 1406, 1408 (11th Cir. 1988), the basic premise of the **search**
doctrine is that "searches undertaken without a warrant issued upon

---

[5]    A 2007 district court opinion from the Southern District of
Alabama, Stephens v. City of Butler, Alabama, 509 F.Supp.2d 1098, 1112-13
(S.D.Ala., 2008), citing Draper, found based on the facts and circumstances in
the arrestee Stephens' case (which included 5 taser "trigger pulls" by two
different officers, where the arrestee was making no effort to escape, was
surrounded by officers, and made no movement that would be deemed an attack
upon or threat to officers), that the use of force was "objectively
unreasonable and excessive," and that a reasonable inference could be made
that the second officer who used his taser after a first officer had already
shocked Stephens several times "simply 'piled on.'"  The events in the
Stephens case took place in September 2004, and the district court found that
the state of the law in the Eleventh Circuit, including the opinion in Vinyard
v. Wilson, 311, 1340 (11th Cir. 2002) which involved the spraying of a
detainee multiple times with pepper spray while in custody and not posing a
threat to the officers, gave law enforcement officers fair warning that
repeated use of force on a non-violent arrestee may be deemed excessive and a
violation of the Fourth Amendment. As noted in the Alabama district court
opinion in Stephens, which involved tasers, the Eleventh Circuit in 2002 in
Vinyard made it clear that under certain circumstances, even when the peculiar
facts of a case faced by an officer who has used force are not exactly on
point with prior precedent [e.g. Vinyard involved pepper spray, not
tasers], the prior precedent, involving a different mode of force or set of
facts is still sufficient to put the officer on notice that his use of force
is unconstitutional. Stephens, supra, 509 F.Supp.2d at 1112-13. See Vinyard,
supra, 311 F.3d at 1355 (holding that the defendant officer was not entitled
to qualified immunity, because "[t]he peculiar facts of this case are 'so far
beyond the hazy border between excessive and acceptable force [that every
objectively reasonable officer] had to know he was violating the Constitution
even without caselaw on point,'"(quoting Priester v. City of Riviera Beach,
208 F.3d 919, 926 (11th Cir. 2000)).

probable cause are 'per se unreasonable under the Fourth Amendment–subject only to a few specifically established and well-delineated exceptions.'" (quoting Katz v. United States, 389 U.S. 347, 357 (1967)). Whether the encounter constitutes a **seizure**, thereby triggering the citizen's constitutional rights, turns on whether a reasonable person would feel free to disregard the police and go about his business. Florida v. Bostick, 501 U.S. 429, 434 (1991). A seizure occurs when a person submits to an officer's show of authority. California v. Hodari D., 499 U.S. 621, 628 (1991).

It is further noted that a traffic stop is a seizure within the meaning of the Fourth Amendment. Delaware v. Prouse, 440 U.S. 648, 653 (1979). "[A]n officer may conduct a brief, warrantless, investigatory stop of an individual when the officer has a reasonable, articulable suspicion that criminal activity is afoot, without violating the Fourth Amendment." United States v. Hunter, 291 F.3d 1302, 1307 (11th Cir. 2002). The officer conducting such a stop must have "a particularized and objective basis for suspecting the particular person stopped of criminal activity." United States v. Cortez, 449 U.S. 411, 417-18 (1981). The officer must have "some minimal level of objective justification" taken from the totality of the circumstances. United States v. Sokolow, 490 U.S. 1, 7-8 (1989); United States v. Powell, 222 F.3d 913, 917 (11th Cir. 2000).


IV. Analysis

a. *Excessive Force/Failure to Intervene*

i. Jones and Agular

Officers Jones and Agular moved for partial summary judgment, based upon Bolt's admission to his pre-arrest physical resistance and evasion, and based upon Bolt's *nolo contendre* plea to the charge of resisting arrest with violence, and his subsequent

18

conviction, in essence arguing Bolt's Fourth Amendment excessive force claims are limited to any alleged post-arrest and post-apprehension use of force. (DE#58:4-9). According to the Defendants, Bolt has offered no evidence, nor has he alleged in his pleadings, that the *de minimus* force used in attempting to arrest him, i.e., taser, while he was physically and violently resisting and evading arrest, rises to the level of a constitutional tort or a violation of his constitutional rights. (Id.).

Bolt moves for summary judgment arguing that he has the right to be free from cruel and unusual punishment and the officers should have fulfilled their duty under the color of State law. (DE#64:4). He further asserts that medical records from Broward General Center show the effects of his appearance immediately after being beaten in the face and taunted by the officers; however, he fails to provide proof thereof. (Id.).

According to Jones and Agular's Supplemental Report to the Offense Incident Report and the Probable Cause affidavit sworn to by both officers, Officer Jones, on June 25, 2006, observed a vehicle operating northbound on 31st avenue from the 200 block without headlights. (See DE#59,Ex.1&2). While in a fully marked police vehicle, Officer Jones initiated a traffic stop with lights and siren. (Id.). Upon final rest of the vehicle, the driver, Bolt, appeared to be looking for something in the center console area of the vehicle, a lot of movement was seen by the driver in the center area of his vehicle. (Id.). Contact was thereafter made with the driver, Bolt, who was immediately observed by Officer Jones with his right hand, dropping a white cylinder underneath the driver's seat. (Id.). Bolt was then asked for his license, registration and proof of insurance, which he provided and then when asked, he also consented to a search of his vehicle. (Id.). Bolt and the passenger of his vehicle were removed therefrom, patted down for weapons and instructed to sit on the curb. (Id.). Pursuant to Bolt's consent, Officer Agular searched underneath the driver's seat, which resulted in a white cylinder containing what appeared to be crack cocaine. (Id.). A subsequent field test confirmed the contents

therein was cocaine; specifically, 1.2 grams. (Id.).

Officers Jones and Agular then attempted to place Bolt in custody, at which point, Bolt pushed Officer Jones throwing him off balance, then turned to Officer Agular, whom had grabbed Bolt's left hand, pulled it away, and then used his right hand with a closed fist to punch Officer Agular in the chest, causing the officer to fall down on his back. (See DE#59,Ex.1&2). Officer Jones then grabbed Bolt's left arm as Bolt attempted to flee. (Id.). Despite the officer's efforts, Bolt managed to free his left arm and then elbowed Officer Jones in the right shoulder and neck area knocking Officer Jones into his patrol vehicle. (Id.). In an attempt to once again subdue Bolt, Officer Jones grabbed Bolt's shirt, which only then caused Bolt to swing his left elbow striking the officer several times in the chest area and left arm. (Id.). Although Sergeant Lefferts assisted restraining Bolt, Bolt nonetheless began to violently swing and flail his arms in attempt to strike the officers and flee. (Id.). During this incident, Bolt was advised several times by way of loud verbal commands that he was under arrest, to stop resisting and to stop fighting. (Id.).

Officer Agular then pulled out a taser and gave Bolt more verbal commands, such as to "stop resisting, get on the ground" and "your under arrest," while also warning Bolt that if he failed to comply, he would be tased. (Id.). Notwithstanding, Bolt broke free from Officer Jones's grasp, elbowed Officer Jones in the face and neck area pushing him slightly back, and lunged at Officer Agular grabbing the taser device with both of his hands. (Id.) Fearing for officer safety, Officer Agular managed to pull the taser away and deployed the taser onto Bolt's right shoulder causing Bolt to briefly fall to the ground. (Id.). Officers Jones and Agular advised Bolt through several more commands to stay on the ground. (Id.). Despite the officers' warnings, Bolt jumped up and began running westbound. (Id.). Again, loud verbal commands were given for Bolt to get down, put his hands behind his back, and to stop resisting. (Id.). A second cycle of the taser was then issued, which had no effect on Bolt. (Id.).

20

The officers while on foot pursuit of Bolt continued giving him numerous loud commands to stop. (DE#59,Ex.2). Bolt ran through eastbound lanes of Broward Boulevard causing several vehicles to swerve out of his way, while simultaneously running through vehicle traffic on the westbound lanes. (Id.). Eventually, Officer Jones grabbed hold of Bolt's torso from the rear, at which point Bolt tensed both arms, violently punched Officer Jones's hand causing a laceration thereto and elbowed both sides of the officer's chest. (Id.). Officer Agular then issued a third taser cycle, which had no effect on Bolt. (Id.).

Officer Agular then assisted Officer Jones to bring Bolt to the ground. (DE#59,Ex.2). While doing so, Bolt struck Officer Jones in the chest with closed fist and ripped Officer Agular's radio from his person while the officer attempted to update their location. (Id.). Bolt, now in possession of the radio, with his left hand, swung the radio at Officer Agular's face. (Id.). In self-defense, Officer Agular struck Bolt in the face several times with a closed fist. (Id.). As a result, Bolt dropped the radio, but continued to violently swing his arms. (Id.). Bolt then turned on his stomach and tucked his arms underneath himself preventing officers from handcuffing him. (Id.). Officer Jones struck Bolt in the rear of his left arm with a closed fist which freed up his arm which permitted the officer to attach the handcuff to his wrist. (Id.). Notwithstanding, Bolt would not free his right arm, despite the loud verbal command to stop resisting arrest. (Id.). Ultimately, Bolt's right arm was pried from underneath him. (Id.). The officers ultimately regained control and placed Bolt under arrest. (Id.). As a result of the struggle, Bolt sustained punctures from the taser as well as a laceration to his left eye. (Id.).

Bolt, however, vaguely asserts that he was subjected to "cruel and unusual punishment" as a result of the Officer Jones's actions. Aside from providing a copy of his statement of facts set forth in the complaint as his unsworn "affidavit" and providing copies of the documents already presented by the Defendants in support of

their motion, Bolt fails to provide any evidence, except self-
serving allegations, that he was exposed to excessive force during
his apprehension. He fails to rebut the affidavits and reports
description of Officer Jones and Agular's involvement.

From the evidence of record, which is consistent with facts
alleged in the Defendants' motion for partial summary judgment,
which also fills in details omitted by Bolt, it is readily apparent
under the circumstances discussed at length above, which were faced
by Officers Jones and Agular at the scene of the traffic stop, that
the uses of force which they applied in an attempt to arrest Bolt
were measured and reasonable. Given the un-refuted evidence of
record, that Bolt physically resisted the officers' initial
attempts to restrain him both on the ground and standing, striking
the officers in the process, engaging in a struggle during which
Bolt attempted to reach for and get control of his weapon; and
given the fact that Bolt was able to free himself and flee, it is
also apparent that the discharge of the taser by the officers was
reasonable under the circumstances. The use of the taser force was
resorted to only after Bolt had physically resisted an attempt to
restrain him and his attempt to flee. The officers' first use of
the taser was not unlike that in Draper v. Reynolds, supra, which
was held to be constitutionally reasonable. So too was the second
and third use of the taser by the officers reasonable under the
circumstances which are shown to have occurred by the un-refuted
evidence of record, when Bolt continued to refuse orders to get
prone on the ground. The uses of the taser in this case area a far
cry from the use of force in Stephens v. City of Bulter, Alabama,
supra (discussed in footnote 4 of this Report), in which there were
no less than five trigger pulls on taser devices by two different
officers where the facts in that case showed the arrestee was
making no effort to escape, made no threatening movements toward
officers, and was surrounded by officers.

In sum, it is apparent that the uses of force by Officers
Agular and Jones at the scene of the traffic stop were measured,
and that the officers first attempted to restrain Bolt with manual

force. Only after the officers met escalating resistence and force against him by Bolt, did the officers resort to a taser; and that device was used three times only after Bolt had continued his attempts to escape. Given these facts, notwithstanding Bolt's attempt through his complaint/allegations to attribute some of his injuries to the officers' use of force (an allegation which he has not substantiated with medical records or other documents of the sort contemplated under Rule 56 as competent evidence for refuting a motion for summary judgment) it is apparent that Officers Jones and Agular's uses of force were not excessive under the circumstances, and did not amount to a violation of Bolt's constitutional rights under the Fourth Amendment. Where force applied was reasonable under the circumstances and not excessive, the police officer has not violated any clearly established constitutional right, and is entitled to summary judgment based upon qualified immunity. Moore v. Gwinnett County, 967 F.2d 1495, 1498 (11th Cir. 1992), cert. denied, 506 U.S.1081, (1993), quoting, Leslie v. Ingram, 786 F.2d 1533, 1536 (11th Cir. 1986). See also Graham v. Connor, supra; and Smith v. Mattox, supra, 127 F.3d at 1419.

Accordingly, Officers Jones and Agular are entitled to qualified immunity and their motion for partial summary judgment is granted. Bolt's motion for summary judgment is denied.

### ii. Lefferts

Where it is apparent there was no constitutional violation by Officers Jones and Agular, then it follows that there was no constitutional duty on the part of their fellow officer, Sergeant Lefferts, to intervene and prevent Officers Jones and Agular from using the force in question for which Bolt has sued them. The claim of failure by Sgt. Lefferts to prevent Officers Jones and Agular's use of force at the scene of the initial stop therefore fails.

### b. *Search and Seizure*

i. Jones

While the Fourth Amendment protects persons from unreasonable searches and seizures, it is apparent in this case, based on aforementioned evidence concerning Bolt's driving behavior, that it was reasonable for Officer Jones to make the initial traffic stop, and address the driver Bolt and request identification and insurance papers. Whren v. United States, 517 U.S. 806, 810 (1996)("the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred").

Thereafter, the length of Bolt's detention was properly extended, when, as shown by the evidence discussed above, a vile of crack cocaine rocks was found underneath the driver's seat of his vehicle, and Officer Jones had reason to believe that Bolt's vehicle had been involved. See United States v. Pruitt, 174 F.3d 1215, 1220 (11th Cir.1999) (During a traffic stop, the officer may lengthen the detention for further questioning beyond that related to the initial stop when: (1) the officer has an objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring; or (2) the initial detention has become a consensual encounter); United States v. Arvizu, 534 U.S. 266, 273 (2002) (when determining whether reasonable suspicion exists, the courts must review the "totality of the circumstances" to ascertain whether the detaining officer had a "particularized and objective basis" for suspecting legal wrongdoing).

Probable cause to make an arrest exists where the facts and circumstances within collective knowledge of law enforcement officials, of which the officers had reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that the suspect had committed or was committing a crime. Carroll v. United States, 267 U.S. 132 (1925); Brinegar v. United States, 338 U.S. 160, 175-76 (1949)); Beck v. Ohio, supra, 379 U.S. at 91; Marx v. Gumbinner, 950 F.2d 1503, 1505-06 (11th Cir. 1990); Von Stein v. Brescher, 904 F.2d 572, 578 (11th Cir. 1990); Wilson

v. Attaway, 757 F.2d 1227, 1235 (11th Cir. 1985); United States v. Middleton, 599 F.2d 1349, 1356 (5th Cir. 1979). The quantum of proof to establish probable cause is, therefore, significantly less than evidence sufficient to obtain a conviction. United States v. Pantojo-Soto, 739 F.2d 1520 (11th Cir. 1984), cert. denied, 470 U.S. 1008 (1985). In this case, un-refuted evidence shows that, after Officer Jones observed a lot of movement in the center area of the vehicle and saw Bolt drop some sort of cylinder upon the officer's approach to the vehicle as a result of the traffic stop, Officer Jones had reason to believe Bolt was involved in a criminal offense, and under those circumstances would have at least arguable probable cause to arrest. Then, after Bolt had resisted and struggled with Officers Jones and Agular, and had struck him during the officers' constitutionally valid attempt to detain him, on those facts, when coupled with the information indicating to Officer Jones that Bolt was likely involved possession of crack cocaine, it is apparent that Officer Jones at that point had additional probable cause for an arrest, based on Bolt's resistance, and perceived attempt to flee. There was yet further cause for arrest when Bolt fled from Officers Jones and Agular's attempt to restrain and arrest him, and then fled on foot in an attempt to avoid arrest. Thus, it is clear that there was ample probable cause for Bolt's arrest, on grounds in addition to the possession of crack cocaine, from which all subsequent events evolved.

In sum, it is apparent that Bolt could not prevail on a claim of an improper initial traffic stop, or on a claim of arrest without probable cause in violation of the Fourth Amendment.

### V.Conclusion

It is therefore recommended that: (1) the motion for partial summary judgment by Defendants Jones, Agular and Lefferts (DE#58) be granted; and (2) the motion for summary judgment by Plaintiff Bolt (DE#64) be denied.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

Dated: December 6th, 2010.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Bobby Lee Bolt, pro se
     DC# 769284
     Gainesville Correctional Institution
     2845 N.E. 39th Avenue
     Gainesville, FL 32609

     Alain E. Boileau, Esq.
     Yoss, LLP
     888 S.E. 3rd Avenue
     Suite 500
     Ft. Lauderdale, FL 33316

     Robert Hunt Schwartz, Esq.
     Yoss, LLP
     888 S.E. 3rd Avenue
     Suite 500
     Ft. Lauderdale, FL 33316